1
2
3
4
5
6
7
8
9        UNITED STATES DISTRICT COURT

10       SOUTHERN DISTRICT OF CALIFORNIA

11

12   MANUEL M. SOARES,                    Case No.:  23-cv-369-WQH-DEB

                              Plaintiff,  **ORDER**
13

14   v.

15   CITY OF SAN DIEGO,

16                           Defendant.

17   HAYES, Judge:

18       The matters before the Court are (1) the Motion for Summary Judgment filed by

19   Plaintiff Manuel M. Soares ("Plaintiff") (ECF No. 32) and (2) the Motion for Summary

20   Judgment filed by Defendant City of San Diego (the "City") (ECF No. 46).

21   **I.    BACKGROUND**

22       On February 27, 2023, Plaintiff, proceeding pro se, initiated this action by filing a

23   Complaint, alleging a single claim that the City violated Title II of the Americans with

24   Disabilities Act ("ADA") when it added bike lanes to Voltaire Street in 2016. (ECF No. 1,

25   Compl. at 1.) Plaintiff seeks "[i]njunctive relief mandating the [City] to return the street

26   back to its original design/condition." *Id.* at 6. Plaintiff also seeks "compensatory, punitive

27   and any/all costs of this lawsuit." *Id.*

28

On the same day Plaintiff filed the Complaint, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis, which the Court granted. (ECF Nos. 2, 5.)

On May 22, 2023, the City filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 10.) On October 19, 2023, the Court denied the Motion to Dismiss Plaintiff's Complaint. (ECF No. 17.)

On April 3, 2024, Plaintiff filed a Motion for Summary Judgment. (ECF No. 32.) Plaintiff's Motion references six declarations, which were filed separately with the Court on December 22, 2023. (*See* ECF No. 25.)

On May 24, 2024, Plaintiff filed an "Amendment to Summary Judgment," attaching copies of his medical records "in support of plaintiff's summary judgment motion." (ECF No. 40 at 1.)

On June 28, 2024, the City filed a Response in opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 41.)

On July 19, 2024, Plaintiff filed a Reply in support of his Motion for Summary Judgment. (ECF No. 44.)

On August 2, 2024, the City filed a Motion for Summary Judgment. (ECF No. 46.)

On August 12, 2024, Plaintiff filed a Response in opposition to the City's Motion for Summary Judgment. (ECF No. 48-3.)

On September 10, 2024, the City filed a Reply in support of its Motion for Summary Judgment. (ECF No. 50.)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.    FACTS[1]

The City's "Blue Zone" program permits people with disabilities to apply for blue curbs to be installed near their homes. A Blue Zone "provide[s] accessible parking for the exclusive use of persons with disabilities who have a distinguishing license plate or placard on their vehicles." (ECF No. 46-13 at 2.) Although an individual may apply for a Blue Zone, once installed, a Blue Zone is "available to all qualifying members of the public and does not constitute reserved individual parking." *Id.*

Prior to the initiation of the present case, the City installed a Blue Zone curb in front of Debra Keith's ("Keith") home at 4343 Voltaire Street. Plaintiff lives with Keith at her home. Plaintiff alleges that he is disabled because he "has mobility issues," "has suffered two strokes," and "has had a right foot tendon repair, [an] umbilical hernia repair, and [has been] hospitalized for cardio and other procedures." (Compl. at 2.) Plaintiff parks in the Blue Zone space in front of Keith's home when it is unoccupied, which is "about 50 percent" of the time. (*See* ECF No. 46-17 at 63:14–64:7.)

---

[1] The City filed objections to Plaintiff's evidence. (*See* ECF Nos. 41-1, 50-3.) The objections to evidence not cited in this Order are denied as moot. Defendants' objections to Plaintiff's reliance on various declarations, allegations in his Complaint, and email exchanges with City officials are addressed *infra* at 12 n.5, 15 n.6, and 20 n.10, respectively. The objections to evidence cited in this Order, other than the aforementioned objections, are overruled. It is not clear that the evidence relied upon in this Order could not be presented in an admissible form at trial. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.").

Additionally, while Plaintiff filed a Separate Statement of Disputed Material Facts in Opposition to the City's Motion for Summary Judgment (ECF No. 48-1) that appears to take issue with at least some of the City's evidence, Plaintiff fails to articulate any legitimate reason that the Court may not consider the City's evidence. Instead, Plaintiff primarily includes commentary or arguments that do not undermine the legitimacy or admissibility of the City's evidence. *See, e.g., id.* at 3 (responding to the City's statement that "[t]his section of Voltaire Street is 40 feet and 1 inch" by stating that the measurement "shows that the [City] has no regard for the safety and well-being of Citizens"). To the extent Plaintiff intended for ECF No. 48-1 to serve as objections to the City's evidence, his objections are overruled with respect to any evidence the Court relies upon in this Order. *See Collender v. City of Brea*, No. SACV 11-0530 AG (MLGx), 2013 WL 11316942, at *4 (C.D. Cal. Mar. 4, 2013) (declining to "methodically scrutinize each objection" where "many of the objections did not actually dispute the essential facts at issue, but instead merely kick up some argumentative dust").

1    In 2016, the City resurfaced Voltaire Street and implemented new bikeways in

2    accordance with the City's Bicycle Master Plan.[2] Specifically, the City added uphill bike

3    lanes (Class II Bikeways) and downhill shared-use lanes (Class III Bikeways) on Voltaire

4    Street. In 2020, the City again resurfaced Voltaire Street, keeping the same bikeways in

5    place. The southbound side of Voltaire Street, where Plaintiff lives, currently includes a

6    Class III shared-use bikeway. Class III shared-use bike routes "provide shared use with

7    motor vehicle traffic within the same travel lane." (ECF No. 46-7 at 27.) The City's Traffic

---

[2] The City requests that the Court take judicial notice of: the City's 2008 General Plan; the City's 2002 Bicycle Master Plan; the City's 2013 Bicycle Master Plan; the City's Resolution No. 308597 Adopting Bicycle Master Plan; Chapter 1000 of the California Highway Design Manual; and the City's Council Policy 500-08. (ECF No. 46-3.) Plaintiff requests that the Court take judicial notice of two news stories regarding "shared traffic lanes" and "bike lanes" in Point Loma that were aired on CBS News 8 and KUSI Channel 9 News, respectively. (ECF No. 48.) Plaintiff's requests are opposed by the City. (ECF No. 50-5.) Pursuant to Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of "matters of public record" and facts that are "not subject to reasonable dispute because" the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The Court grants the City's unopposed request that the Court take judicial notice of the City's 2013 Bicycle Master Plan (ECF No. 46-7), which is a public record, and Chapter 1000 of the California Highway Design Manual (ECF No. 46-11), which is a document published on a government website. *See Insight Psych. & Addiction, Inc. v. City of Costa Mesa*, 724 F. Supp. 3d 1067, 1079 (C.D. Cal. 2024) (taking judicial notice of various records, including the City's General Plan Land Use Map, because "judicial notice is proper for public records"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (courts may take judicial notice of information on government websites as long as there is no dispute as to the authenticity of the website or accuracy of the information). The Court declines to take judicial notice of the City's remaining requested documents, which the Court does not rely on in this Order. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

The Court denies Plaintiff's request that the Court take judicial notice of the news stories because "[c]ourts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *see Rodriguez v. Fisher*, No. 21-cv-1442-BAS-MSB, 2022 WL 2239347, at *11 (S.D. Cal. June 22, 2022) ("[T]he Court is restrained to judicially notice only the fact of news coverage, not its truth."). Plaintiff contends that his requests for judicial notice "should be viewed by this court as this evidence clearly clarifies and supports the plaintiff's position of this dangerous and unprecedented street design created by the [C]ity." (ECF No. 48-3 at 5.) Plaintiff thus apparently desires for the Court to consider the contents of the news stories, which are not properly the subject of judicial notice. Thus, "[b]ecause there is no indication before the court that [the plaintiff] intends to use these articles for anything other than evidence of their contents," Plaintiff's Request for Judicial Notice (ECF No. 48) is denied. *Holland v. King Cnty. Adult Det.*, No. C12-0791JLR, 2013 WL 1192763, at *2 (W.D. Wash. Mar. 22, 2013).

Engineering Division designed the bikeways on Voltaire Street to comply with the California Highway Design Manual, which provides for the implementation of Class III shared-use bike routes "to provide continuity to the bikeway system." (*See* ECF No. 46-10 ¶ 8; ECF No. 46-11 at 17.) Despite these changes, a Blue Zone is still located outside of Plaintiff's home.

Plaintiff alleges that the City's addition of the bike lanes on Voltaire Street has "diminish[ed] that parking area" on the southbound side of the street. (Compl. at 3.) Plaintiff alleges that the parking area on the southbound side of Voltaire Street is now several inches narrower than the parking area on the northbound side of Voltaire Street. *See id.* Plaintiff alleges that the alteration to the street design "compromises a Disabled Parking area … exposing [P]laintiff and others to a substantial risk of life." *Id.* Plaintiff alleges that because the street parking is now narrower, Plaintiff and others parking on the southbound side of Voltaire Street must park on the curb in order to safely enter and exit their vehicles. *See id.* at 4.

Plaintiff testified that "[t]he entire street" is "dangerous." (ECF No. 46-17 at 92:22.) He testified that "[t]he City's design … affected the whole side of that street, the disabled parking, the regular parking, everybody." *Id.* at 54:1–4.

## III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that is relevant to an element of a claim or defense, and whose existence might affect the outcome of the case." *See United States v. Grayson*, 879 F.2d 620, 622 (9th Cir. 1989) (citation omitted). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542–43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof.  Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials *negating* the nonmoving party's claim." (citations and internal quotation marks omitted)).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient[.]"). The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "'[w]here the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

"[W]hen parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV.    DISCUSSION

Plaintiff seeks summary judgment on his claim against the City for violating Title II of the ADA. (*See* ECF No. 32-2 at 1 ("Plaintiff filed this action … for violations of his ADA rights."); ECF No. 44-1 at 6 ("The City[ ] Continually Violates Plaintiff's Rights under the A.D.A.").) Plaintiff contends that he has notified the City of collisions that have occurred on Voltaire Street, "and the [City's] failure to act is an intentional and deliberate indifference to plaintiff's rights." (ECF No. 32-2 at 2.) Plaintiff contends that the City does not provide evidence controverting "the fact that someone had died on this street" or the "continual reoccurring collisions" alleged in the Complaint. (ECF No. 44-1 at 6.)

The City likewise seeks summary judgment on Plaintiff's ADA claim. The City contends that Plaintiff cannot establish: (1) that he is a person with a disability; (2) that he was either excluded from participation in, or denied the benefits of, the City's on-street parking program or otherwise discriminated against by the City; or (3) that any such exclusion, denial of benefits, or discrimination was by reason of his disability.

Title II of the ADA applies to "any State or local government." 42 U.S.C. § 12131(1)(A). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. In order to prove a violation of Title II of the ADA, a plaintiff must show: (1) he is an individual with a disability; (2) he is otherwise qualified to

participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quotations omitted) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). "An individual is excluded from participation in or denied the benefits of a public program if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities.'" *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 987 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149).

A plaintiff may obtain injunctive relief for a violation of the ADA without demonstrating the defendant's discriminatory intent. *See Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 254 F.3d 846, 851 (9th Cir. 2001) ("[W]e have acknowledged that equitable remedies for violations of the ADA are available regardless of a defendant's intent."). In the present case, Plaintiff seeks injunctive relief "mandating the [City] to return the street back to its original design/condition." (Compl. at 6.)

To recover monetary damages under Title II of the ADA, however, a plaintiff must further show that the defendant intentionally discriminated against him. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001). Here, in addition to injunctive relief, Plaintiff seeks damages and appears to base his ADA claim upon a theory of intentional discrimination. (*See* Compl. at 6 (seeking "compensatory, punitive and any/all costs of this lawsuit."); *id.* at 1 (alleging that the City's failure to act "demonstrates an intentional and deliberate indifference"); *see also* ECF No. 32-2 ("[The City's] actions in failing to abate this problem exhibit an intentional and deliberate indifference ….").[3] The

---

[3] The Court notes that while compensatory damages are available under Title II of the ADA, punitive damages are not. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages may not be awarded in private suits brought … under [Title II] of the ADA.").

Ninth Circuit has adopted a deliberate indifference standard for assessing intentional discrimination under the ADA. *Duvall*, 260 F.3d at 1138. Under this standard, a plaintiff must show "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that … likelihood." *Id.* at 1139. A plaintiff satisfies the first element of the deliberate indifference test "[w]hen the plaintiff has alerted the public entity to his need for an accommodation." *Updike v. Multnomah County*, 870 F.3d 939, 951 (9th Cir. 2017) (quoting *Duvall*, 260 F.3d at 1139). A plaintiff also satisfies the first element if "the need for an accommodation is obvious, or required by statute or regulation." *Id.* (quoting *Duvall*, 260 F.3d at 1139).

The United States Court of Appeals for the Ninth Circuit has held that Title II requires public entities to "maintain accessible on-street public parking." *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014). In *Fortyune*, the Ninth Circuit identified two federal regulations that govern the accessibility of on-street public parking—28 C.F.R. § 35.150 and 28 C.F.R. § 35.151. *See id.* at 1102–04. Whereas 28 C.F.R. § 35.150 "applies to all existing facilities," 28 C.F.R. § 35.151 "governs only facilities that were constructed or modified after the ADA's effective date" of June 26, 1992. *Id.* at 1102–03. Here, the City modified Voltaire Street in 2016 and 2020, after the ADA's effective date. Accordingly, 28 C.F.R. § 35.151 governs the on-street public parking at Voltaire Street. This regulation requires "each facility" constructed or altered after January 26, 1992, to be "readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.151(a)(1), (b)(1). The regulation further provides that "[i]f physical construction or alterations commence on or after March 15, 2012, then new construction and alterations subject to this section shall comply with the 2010 Standards [for Accessible Design, promulgated by the Department of Justice ('2010 Standards')]." *Id.* § 35.151(c)(3). Neither 28 C.F.R. § 35.151 nor the 2010 Standards contain technical specifications for on-street public parking. *See* 28 C.F.R. § 35.151; U.S. Dep't of Just., C.R. Div., 2010 ADA Standards for Accessible Design, https://www.ada.gov/law-and-regs/design-standards/2010-stds/#-2010-standards-for-titles-ii-and-iii-facilities-2004-adaag (last

visited Feb. 28, 2025); *see also Fortyune*, 766 F.3d at 1103 (noting that "the technical specifications governing newly constructed or altered facilities are silent with respect to on-street parking"). Despite the lack of applicable technical specifications, the Ninth Circuit held that "nothing in 28 C.F.R. § 35.151 suggests that when technical specifications do not exist for a particular type of facility, public entities have no accessibility obligations." *Fortyune*, 766 F.3d at 1103. The Ninth Circuit accordingly "read 28 C.F.R. § 35.151 to require that all public on-street parking facilities constructed or altered after the ADA's effective date be accessible." *Id.*

The City "agrees public parking is a City program, and thus needs to be accessible to those with disabilities." (ECF No. 41 at 8.) However, the City contends that Plaintiff lacks evidence to create a genuine dispute of material fact as to whether the City discriminated against Plaintiff on the basis of his disabilities with respect to his access to public on-street parking.

Here, assuming without deciding that Plaintiff is "a person with a disability,"[4] Plaintiff's ADA claim nevertheless fails because he has not "designate[d] specific facts showing that there is a genuine issue for trial" as to an essential element of his claim. *Celotex Corp.*, 477 U.S. at 324. Specifically, Plaintiff has not produced sufficient evidence demonstrating that the City excluded him from, or denied him the benefits of, on-street public parking or otherwise discriminated against him by reason of his disability. *See McGary*, 386 F.3d at 1265. Plaintiff's deposition testimony illustrates how he has failed to establish that the difficulties he has experienced with parking on Voltaire Street are "by reason of his disability." Plaintiff testified that "[t]he City's design, I believe, affected the whole side of that street, the disabled parking, the regular parking, everybody." (ECF No.

---

[4] The City objects (*see* ECF No. 41-1 at 7) to the medical records that Plaintiff filed in an effort to establish that he is "a person with a disability" (*see* ECF No. 40). The Court need not address these objections or this element of Plaintiff's ADA claim, however, because as discussed below, Plaintiff cannot establish another essential element of his claim.

46-17 at 54:1–4.) Plaintiff also testified that he believed "[t]he entire street" was "dangerous":

> Q[:] The facts supporting your claim that the disability parking area on the street are continual and dangerous condition. Is it pretty much solely based on the width of the on-street parking?
> A[:] Yeah. It's the parking spot.
> Q[:] Would you say … the entire street's the dangerous part or just the handicap parking spot is dangerous?
> A[:] *The entire street*, ma'am.

*Id.* at 92:14–22 (emphasis added). Plaintiff further testified that the City's alterations to the design of Voltaire Steet affect "everybody":

> Q[:] Has it – do you believe it's exposed not just you, but everyone on the street to a reasonable risk?
> A[:] Oh yes. I believe so. I think everybody else did.

*Id.* at 98:5–9.

Thus, Plaintiff's deposition testimony demonstrates that the issues he experiences with parking on Voltaire Street are common to all residents, regardless of whether they have disabilities or not. Plaintiff's testimony is devoid of any explanation as to how the difficulties that he experiences with parking on Voltaire Street are by reason of his disability or otherwise any different from the difficulties experienced by others without disabilities. In short, Plaintiff's assertion that the City's street design violates his rights under the ADA while simultaneously exposing "everybody" to a dangerous risk, *id.* at 54:1–4, is both inconsistent and insufficient to support an ADA claim. *See Navarro v. City of Mountain View*, No. 21-cv-05381-NC, 2021 WL 5205598, at *7 (N.D. Cal. Nov. 9, 2021) ("[I]t seems inconsistent to argue that the Ban harms *all* OSV residents while simultaneously arguing that the Ban targets OSV residents with disabilities because of their disabilities."); *Labowitz v. Bird Rides, Inc.*, No. CV 18-9329-MWF (SK), 2019 WL 8750219, at *7 (C.D. Cal. Oct. 29, 2019) (finding that the plaintiffs failed to sufficiently allege that they were discriminated against because of their disability where their "alleged

injuries could, and indeed would, be felt by any pedestrian who encountered the … obstruction of the Pedestrian Rights of Way").

The Ninth Circuit has held that a plaintiff may show that he has been discriminated against "by reason of" his disability where a "facially neutral polic[y] … unduly burden[s] disabled persons, even when such policies are consistently enforced." *McGary*, 386 F.3d at 1265. Such a claim, however, requires the plaintiff to show that the "policy burdened him in a manner different from and greater than it burdened non-disabled residents." *Id.* Here, even when viewed in the light most favorable to Plaintiff, no reasonable jury could find from Plaintiff's testimony that the width of the on-street public parking on Voltaire Street burdens Plaintiff in a manner different from or greater than it burdens non-disabled residents. Thus, Plaintiff's testimony fails to show that he is affected by the City's alterations to Voltaire Street "because of" or "by reason of" his disability.

Plaintiff's other evidence similarly fails to create a genuine dispute of material fact as to this element. For example, even if the Court were to consider all the statements in the declarations Plaintiff submitted to be competent summary judgment evidence,[5] the statements therein only further undermine Plaintiff's ability to establish that he is affected by the parking on Voltaire Street by reason of his disability. (*See* ECF No. 25.) Indeed, only two of the declarants reference disabilities in connection with their complaints about Voltaire Street. Keith, who lives in the same home as Plaintiff, states that she is disabled and that her vehicle was "struck and totaled" while parked in the Blue Zone in front of her home at 4343 Voltaire Street. *See id.* at 4 ¶¶ 1, 4. Declarant Jason Donlon states that his disabled mother-in-law resides with him, but he goes on to state that his entire "family,"

---

[5] The City objects to the Court's consideration of these declarations, contending that "[e]very declaration contains inadmissible hearsay, unqualified expert testimony, improper legal conclusions, opinion testimony by a lay witness, lacks foundation, is irrelevant, and assumes facts not in evidence." (ECF No. 41 at 11; *see* ECF No. 41-1 at 3–6 (detailing the City's objections to each declaration).) The Court need not rule on the City's objections, however, because the Court references Plaintiff's declarations merely for illustrative purposes to demonstrate why Plaintiff has failed to show that there is a genuine dispute of material fact as to an essential element of his ADA claim.

which includes his wife and two children, "[has] great difficulties getting into and out of our vehicles on our side of this downhill roadway." *Id.* at 6 ¶¶ 1, 3. The other declarants do not mention any disabilities when describing the parking "hardships" and collisions they have experienced elsewhere on Voltaire Street. *See, e.g.*, *id.* at 3 ¶ 3 (declarant Michael Blakely stating that "[t]he on-street parking is so narrow and dangerous on our side of this street that [he] must park up on the curb to be safe while exiting and entering [his] vehicle"); *id.* at 5 ¶ 2 (declarant William Rabello stating that "[there have] been an excess of collisions and that [his] vehicle was struck and damaged when it was sideswiped in a hit and run in front of [his] home" at 4347 Voltaire Street); *id.* at 7 ¶¶ 1–2 (declarant Simon Ferreira stating that he "suffered several thousands of dollars in damages to [his] property when in November of 2020 a car crashed through [his] fence and into [his] yard" at 4570 Voltaire Street). These declarations demonstrate that the design of Voltaire Street impacts both disabled and non-disabled residents alike, which cannot support Plaintiff's claim that the hardships he complains of constitute discrimination against him "by reason of" or "because of" his disability.

Plaintiff's situation is akin to that of the plaintiff in *Redding v. Lane Community College*, who similarly failed to establish an issue of fact as to whether any exclusion from a public entity's "programs or services" was "due to her disability." No. 6:11-6212-TC, 2012 WL 5879527, at *2 (D. Or. Nov. 19, 2012). In *Redding*, the plaintiff asserted that her community college, a public entity, violated the ADA after she "tripped and fell due to a hole" in the parking lot that was located in the handicap access aisle next to the handicapped parking space where her vehicle was parked. *Id.* at *1. The district court granted summary judgment to the defendant because, "[e]ven assuming *arguendo*" that she had "established an issue of fact regarding whether the hole in the parking lot prevented her from participating in [the college's] programs and services," the plaintiff's "ADA claim would fail because she cannot establish an issue of fact regarding whether she was excluded from [the college's] programs or services due to her disability." *Id.* at *2. The court observed that "a hole in a parking lot can impact any person, regardless of disability. Thus, any

exclusion by virtue of tripping on a parking hazard cannot be said to be an exclusion due to disability." *Id.* (citing *Ms. K. ex rel. S.B. v. City of South Portland*, 407 F. Supp. 2d 290, 295–96 (D. Me. 2006) (granting summary judgment to the defendants on plaintiff's ADA claim stemming from a disabled child slipping on any icy sidewalk because "the icy sidewalk alone does not constitute a violation of the ADA" because the sidewalk "constituted a hazard for the disabled and non-disabled alike")). As in *Redding*, Plaintiff's evidence establishes only that the width of Voltaire Street "impact[s] any person" who parks on the southbound side of the street, "regardless of disability," which is insufficient to create a genuine dispute of material fact as to the "by reason of his disability" element of Plaintiff's ADA claim. *Id.*

Plaintiff's assertion in his Motion for Summary Judgment that "this disability parking area has been inoperative and inaccessible since the City of San Diego implemented this unprecedented and unnecessary street alteration" fails to create a genuine dispute of material fact for multiple reasons. (ECF No. 32-2 at 2–3.) For one matter, the Court cannot consider "unsworn statements made in the parties' briefs" at the summary judgment stage. *Harris v. Shelland*, No. 15cv2442-MMA-JLB, 2017 WL 2505287, at *4 (S.D. Cal. June 9, 2017) (citing *Moran v. Selig*, 447 F.3d 748, 759 & n.16 (9th Cir. 2006)). Additionally, even if the Court considered this assertion, Plaintiff's characterization of the Blue Zone in front of his home as "inoperative and inaccessible" is conclusory, and "[c]onclusory statements without factual support are insufficient to defeat a motion for summary judgment." *St. George v. Pexco, LLC*, 496 F. App'x 754, 755 (9th Cir. 2012). It is also unclear, from Plaintiff's assertion, how the Blue Zone is "inoperative and inaccessible," given that Plaintiff testified that he currently parks in the Blue Zone "about 50 percent" of the time. (*See* ECF No. 44-3 at 63:14–64:7.) In fact, when asked during his deposition if he still used the Blue Zone, Plaintiff testified that "[his] car's parked there right now." *Id.* at 94:16–20. Plaintiff's assertion that the Blue Zone is "inoperative and inaccessible" accordingly does not preclude the Court from granting summary judgment to the City on Plaintiff's ADA claim.

Nor do Plaintiff's assertions in his Reply brief regarding the recent installation of another Blue Zone at 4531 Voltaire Street, with different measurements than the one in front of his home, offer support for Plaintiff's contention that he "has not been treated equal." (ECF No. 44-1 at 1.) As discussed above, no technical specifications exist for on-street public parking. *See Fortyune*, 766 F.3d at 1103. That the measurements of two Blue Zones differ does not, without more, show that Plaintiff has been discriminated against by reason of his disability.

Plaintiff contends that the City fails to provide evidence controverting "the fact that someone had died on this street" or the "continual reoccurring collisions" alleged "[o]n Pages 5-6 of the [C]omplaint." (ECF No. 44-1 at 6.) Setting aside whether the corresponding allegations in Plaintiff's Complaint constitute competent summary judgment evidence,[6] none of the events described by Plaintiff demonstrate how the City's provision of on-street public parking on Voltaire Street excludes Plaintiff from or denies him access to a benefit or otherwise discriminates against him by reason of his disability. Even Plaintiff's testimony that he has "almost died on that road a couple of times" does not demonstrate that the dangers he has experienced with parking on Voltaire Street are by

---

[6] The City contends that the Court cannot consider "any purported facts supported by Plaintiff's complaint" because an unverified complaint does not constitute evidence at the summary judgment stage. (ECF No. 41 at 10.) Plaintiff contends that he "submitted a verified complaint." (ECF No. 44-1 at 5.) The Complaint bears Plaintiff's signature under the statement "I declare under penalty of perjury that the foregoing is true and correct." (Compl. at 8; *cf. Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1088 (S.D. Cal. 2023) (noting that, where the plaintiff verified the First Amended Complaint "under oath," "[o]nce sworn, the First Amended Complaint becomes equivalent to an unauthenticated affidavit.").) Although Plaintiff's Complaint may be considered a "verified complaint," the allegations in the Complaint cannot be considered at the summary judgment stage unless they satisfy other requirements, including being made on "personal knowledge." *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Talavera*, 670 F. Supp. 3d at 1088 ("[A] verified complaint may only be considered under Rule 56 if it is based on personal knowledge rather than information and belief."). However, the Court need not evaluate the propriety of considering these statements in the Complaint because, for the reasons described above, they are immaterial to Plaintiff's ability to create a genuine dispute of material fact as to the "by reason of his disability" element of his ADA claim.

reason of his disability. (ECF No. 44-3 at 38:19–20.) The City is not required to proffer evidence disproving that these events occurred because, while the events described by Plaintiff are unfortunate, they shed no light on the issue of how the City's alterations to Voltaire Street excluded Plaintiff from, or denied him the benefits of, on-street public parking or otherwise discriminated against him by reason of his disability.[7] Plaintiff must demonstrate this causal link between his complaints about the alterations to Voltaire Street and his disability because generalized complaints about his safety are insufficient to establish a violation of the ADA. "The ADA is not a public-safety statute." *Armbrester v. Alameda County*, No. 17-cv-05231-LB, 2018 WL 5780044, at *3 (N.D. Cal. Nov. 1, 2018). "Indeed, 42 U.S.C. § 12101(b) expressly states that the purpose of the ADA is 'the elimination of discrimination against individuals with disabilities.' … There was no mention of promoting safety or eliminating hazards in the Act[.]" *Id.* (quoting *Levin v. Dollar Tree Stores, Inc.*, No. 06-00605, 2006 WL 3538964, at *3 (E.D. Pa. Dec. 6, 2006)).

Plaintiff's related contentions that "the [C]ity offers no evidence that [P]laintiff is not a disabled person nor provides any evidence that they haven't discriminated against him by creating and subjecting him to this dangerous and unnecessary street alteration" misinterpret the burden of proof at summary judgment. (ECF No. 48-3 at 3.) Plaintiff, as the claimant, bears the burden of proving the elements of his ADA claim. *See Duvall*, 260 F.3d at 1135 ("To prove that a public program or service violated Title II of the ADA, *a plaintiff must show* …." (emphasis added)). Because the City does not bear the burden of proof, it may move for summary judgment "by pointing out to the district court … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In other words, the City "is not required to produce evidence showing the absence of a genuine issue of material fact" and need not "support its motion with affidavits

---

[7] To the extent Plaintiff intends to assert a dangerous condition claim under California Government Code § 835 or otherwise, the Court cannot consider new claims raised for the first time at the summary judgment stage. *See Terpin v. AT&T Mobility LLC*, 118 F.4th 1102, 1113 (9th Cir. 2024) (citing *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006)).

or other similar materials *negating* the [Plaintiff's] claim." *United Steelworkers of Am.*, 865 F.2d at 1542–43; *see also Vahidallah v. Pro. Examination Serv.*, No. 03cv1800 J (AJB), 2005 WL 8173028, at *4 (S.D. Cal. June 24, 2005) (explaining, in a case asserting a violation of Title II of the ADA, that "[s]ince Defendant Board does not bear the burden of proof at trial, Defendant Board need only show that Plaintiff cannot meet his burden of proof at trial, and need not negate Plaintiff's claims"). Plaintiff's contentions that the City fails to offer evidence disproving his claim are unavailing.[8]

Plaintiff's reliance on *Fortyune v. City of Lomita* also fails to persuade the Court that granting summary judgment to the City is improper. In *Fortyune*, the plaintiff complained that "*none* of the City [of Lomita's] public on-street parking is accessible to people with disabilities," and the City of Lomita contended that "it [was] not required to provide accessible on-street parking." 766 F.3d at 1100 (emphasis added). The Ninth Circuit held that the district court had properly rejected the City of Lomita's argument when denying its motion to dismiss because "public entities must ensure that all normal governmental functions are reasonably accessible to disabled persons, irrespective of whether the [Department of Justice] has adopted technical specifications for the particular types of facilities involved." *Id.* at 1106. While *Fortyune* sets out a pertinent general holding regarding a public entity's obligation to provide accessible on-street public parking—which the City acknowledges by "agree[ing] [that] public parking is a City program, and thus needs to be accessible to those with disabilities" (ECF No. 41 at 8)—the case offers no insight on the "by reason of his disability" element of Plaintiff's ADA claim. *Fortyune* thus does not alter this Court's conclusion.

---

[8] Plaintiff's similar contention that the City "remains silent with respect to any safety measures implemented in reconstructing and/or widening this street to [f]acilitate these bicycle lanes and adhere to their standards of minimizing potential conflicts between bicycles and cars, both moving and parked" is unfruitful for the same reasons. (ECF No. 44-1.) The City need not provide such evidence in order to show that it is entitled to summary judgment on Plaintiff's ADA claim.

Although Plaintiff does not cite *Cohen v. City of Culver City*, the Court notes that it is also distinguishable from the case at bar. 754 F.3d 690 (9th Cir. 2014). In *Cohen*, the plaintiff, "who require[d] a cane for mobility," was injured after he tried to step around a vendor's display that was blocking a curb ramp specifically designed for disabled access. *Id.* at 693. The Ninth Circuit held that genuine disputes of material fact existed as to whether Culver City had violated regulations requiring public entities to maintain facilities, including sidewalks, "in operable working condition" and to only permit "isolated or temporary interruptions in service or access due to maintenance or repairs." *Id.* at 659–700 (citing 28 C.F.R. § 35.133(a), (b)). The Ninth Circuit further held that public entities must "make reasonable accommodations to avoid unduly burdening disabled persons," and "a jury could conclude that the City discriminated against Cohen by reason of his disability by failing to take simple, low-cost, reasonable measures to accommodate persons who rely on curb ramps to navigate public sidewalks." *Id.* at 700. Importantly, however, the causal link between the purported ADA violation and the plaintiff's disability was clear in *Cohen* because the plaintiff's injury resulted from the blocked curb ramp, which the plaintiff needed to use as a result of his mobility issues. *See id.* at 693. Here, as discussed above, Plaintiff has not adduced any evidence that, because of his disability, he is burdened by the City's alterations to Voltaire Street in any manner different from non-disabled residents who park on the street. Nor has Plaintiff shown that his Blue Zone parking spot is obstructed or impacted in any manner that differs from the other parking spots on the southbound side of Voltaire Street. The Court accordingly concludes that *Cohen* is factually distinct from the present case.

Plaintiff's citation to *Sarfaty v. City of Los Angeles* is similarly unpersuasive. In *Sarfaty*, the plaintiffs, who were disabled residents who used wheelchairs, alleged that the City of Los Angeles's installation of cycletracks violated the ADA because the cycletracks prevented their vans' ramps from reaching the sidewalk. No. 2:17-cv-03594-SVW-KS, 2019 WL 8163477, at *1 (C.D. Cal. Oct. 16, 2019). The court in *Sarfaty* found that the City of Los Angeles could not argue "that the cycletracks impose[d] no greater burden on

disabled residents than non-disabled" because "[n]on-disabled residents parking outside the cycletracks can step up over the curb," whereas "disabled residents must instead ride in the bike lane until they reach an intersection with a curb ramp." *Id.* at *6. In contrast, here, Plaintiff's evidence shows only that the width of Voltaire Street impacts disabled and non-disabled residents similarly. As discussed above, the declarations that Plaintiff submitted demonstrate that non-disabled residents of Voltaire Street also consider the street parking to be dangerous and state that they must park on the curb in order to enter and exit their vehicles safely. (*See generally* ECF No. 25.) Plaintiff himself similarly testified that he believes the "entire street" is dangerous. (*See* ECF No. 46-17 at 92:14–22.) Unlike the plaintiffs in *Sarfaty*, Plaintiff fails to demonstrate that the design of Voltaire Street imposes a greater burden on him, as a disabled resident, than it imposes on non-disabled residents.

In sum, the Court finds that Plaintiff has not offered evidence creating a genuine dispute of material fact as to whether he has been excluded from or denied the benefits of on-street public parking or otherwise discriminated against *by reason of his disability*. Without evidence of this essential element of Plaintiff's ADA claim, the claim necessarily fails, and the City is entitled to summary judgment. The Court need not consider Plaintiff's ability to create a genuine issue of material fact as to the other elements of his claim.[9] *See Simonelli v. County of Monterey*, No. 17-cv-01448-SVK, 2018 WL 3093457, at *13–14 (N.D. Cal. June 22, 2018) (granting summary judgment to the defendants on the plaintiff's claim for a violation of Title II of the ADA because the plaintiff "ha[d] no evidence that his alleged exclusion … was 'by reason of' his disability"), *aff'd*, 800 F. App'x 522 (9th Cir. 2020).

As for Plaintiff's request for monetary damages, Plaintiff likewise fails to create a genuine dispute of material fact as to the City's "deliberate indifference." Plaintiff contends

---

[9] The Court accordingly does not address the City's other arguments, including that its implementation of the Blue Zone program and installation of a Blue Zone in front of Plaintiff's home constitute a "reasonable modification."

that he "alerted city officials calling them complaining and sending them E-mails and photographs of collisions prior to the filing of this lawsuit and the [C]ity's' [sic] failure to act is an intentional and deliberate indifference to plaintiff's rights." (ECF No. 32-2 at 2.) The Court assumes that Plaintiff is referencing his emails to Judit Havens of the City's ADA Compliance and Accessibility Sustainability & Mobility Department. Plaintiff attached some of these emails to the Complaint and filed other emails separately.[10] (*See generally* Compl. at 9–13; ECF No. 23 at 5–12.) These emails do not demonstrate, however, that Plaintiff put the City on notice that he was at risk of harm *by reason of his disability*. Rather, the emails merely reflect Plaintiff's frustration with "how narrow this Lane was made by the [C]ity." (Compl. at 11.) Plaintiff states in some of the emails that "there have been several accidents, since [re]striping and altering the handicap parking spot, specifically endangering the lives of handicapped individuals" (ECF No. 23 at 8), and that he is "requesting an ADA compliance accessibility test," *id.* at 10.[11] However, these statements fail to connect his requests to his disability or otherwise demonstrate that the alterations to Voltaire Street have disproportionately burdened him or put him at a greater risk because of his disability. Merely complaining that Plaintiff is disabled and that Voltaire Street is dangerous does not, without more, demonstrate the necessary causal link between Plaintiff's disability and the risks he faces. Nor do the emails demonstrate that Plaintiff

---

[10] The City objects to the Court's consideration of the emails attached to the Complaint because it contends "they lack foundation, are and include hearsay, assume facts not in evidence, lack authentication, include improper legal conclusions, and to the extent the Exhibit includes emails from persons other than Plaintiff, [Plaintiff] lacks personal knowledge" of the matters therein. (ECF No. 41-1 at 6.) The Court relies upon only the emails from Plaintiff, because it is not clear that this evidence could not be presented in an admissible form at trial. *See Comite de Jornaleros de Redondo Beach*, 657 F.3d at 964 n.7. Moreover, the Court finds that Plaintiff's emails do not appear to be hearsay, as Plaintiff seems to rely on them not for the truth of the matter asserted in the emails, but rather to demonstrate that he provided the City with notice of his concerns about Voltaire Street. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: … a party offers in evidence to prove the truth of the matter asserted in the statement.").

[11] To the extent Plaintiff's email requested a "test" of whether the measurements of the Blue Zone comply with ADA specifications, the Court again observes that, unlike parking lots and parking structures, there are no technical specifications for on-street public parking. *See Fortyune*, 766 F.3d at 1103 & n.5.

requested a specific accommodation from the City, much less an accommodation in relation to his disability. *Cf. Prado v. City of Berkeley*, No. 23-v-04537-EMC, 2024 WL 3697037, at *23 (N.D. Cal. Aug. 6, 2024) (finding that plaintiffs failed to state an ADA claim for the city's alleged failure to provide them with a reasonable accommodation for certain parking restrictions because "they make no claim that they cannot move their car due to their disabilities"). Thus, to the extent Plaintiff intended the email evidence to serve as notice to the City sufficient to meet the first element of the deliberate indifference test, the Court concludes that, even when viewed in the light most favorable to Plaintiff, Plaintiff's emails do not constitute proper notice, as the emails do not address a risk of harm related to his disability.[12]

Plaintiff has thus failed to create a genuine dispute of material fact as to an essential element of his ADA claim with respect to both his request for injunctive relief and his request for monetary damages. The City is accordingly entitled to summary judgment. Because the Court grants the City's Motion for Summary Judgment on Plaintiff's claim, it necessarily follows that the Court denies Plaintiff's Motion for Summary Judgment.[13]

---

[12] Plaintiff also contends that counsel for the City asked him during his deposition "if the [C]ity denied him any public benefits." (ECF No. 48-3 at 3.) Plaintiff contends that "[t]his Evidence demonstrates that this [C]ity has been intentional and deliberate." *Id.* It is unclear how the City's posing of this question during Plaintiff's deposition demonstrates deliberate indifference. Even considering Plaintiff's response to this question—"Well, I can't get in my car. So, yes. They denied me access to my car, reasonable access, you know?" (ECF No. 44-3 at 99:1–3)—Plaintiff fails to link the difficulties Plaintiff experiences with parking on Voltaire Street to his disability.

[13] The City also seeks summary judgment on Plaintiff's "Government Code § 11135 cause[ ] of action." (ECF No. 46-1 at 5.) In its Response in opposition to Plaintiff's Motion for Summary Judgment, the City contends that "[a]lthough it is unclear if Plaintiff brings his motion for summary judgment under Government Code § 11135 in addition to the ADA, Plaintiff's § 11135 claim fails for the same reasons as his ADA claim." (ECF No. 41 at 23.) Plaintiff does not reference a § 11135 claim in his briefing on the pending summary judgment motions.

The Court previously concluded that Plaintiff's Complaint does not assert a § 11135 claim. Specifically, in its Order denying the City's Motion to Dismiss the Complaint, the Court stated:

> While the caption of the Complaint lists Title II of the ADA and California Government Code § 11135, Plaintiff only discusses and references Title II throughout the body of the Complaint. (*E.g.*, ECF No. 1 at 1 (stating that Plaintiff brings this complaint "pursuant to

## V.    CONCLUSION

IT IS HEREBY ORDERED that the City's Motion for Summary Judgment (ECF No. 46) is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 32) is denied.

The Clerk of the Court shall enter Judgment in favor of the City and against Plaintiff.

Dated:  March 28, 2025

Hon. William Q. Hayes
United States District Court

---

the provisions set forth under Title II of the Americans with Disabilities Act 42 U.S.C. § 12131").) Accordingly, the Court only considers Plaintiff's Complaint as bringing a claim under Title II of the ADA.

(ECF No. 17 at 3 n.1.) In any event, even if Plaintiff intended to assert a claim against the City under California Government Code § 11135, this claim would fail for the same reason Plaintiff's ADA claim fails. *See Henning v. County of Santa Clara*, No. 15-cv-05171 NC, 2017 WL 1036729, at *8 (N.D. Cal. Mar. 17, 2017) (denying summary judgment on the plaintiff's state-law claims, including a claim under California Government Code § 11135, "because the Court found a genuine dispute of material fact as to whether the County violated [the plaintiff's] rights under the ADA," and Government Code § 11135 is "coextensive with the ADA because it incorporates the protections and prohibitions of the ADA and its implementing regulations" (quoting *Bassilios v. City of Torrance*, 166 F. Supp. 3d 1061, 1084 (C.D. Cal. 2015))). The City would accordingly be entitled to summary judgment on Plaintiff's § 11135 claim, to the extent he intended to allege one.