# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MANUEL M. SOARES,

Plaintiff,

v.

CITY OF SAN DIEGO,

Defendant.

Case No.: 23-cv-369-WQH-DEB

**ORDER**

HAYES, Judge:

The matter before the Court is the Motion for Reconsideration filed by Plaintiff Manuel M. Soares. (ECF No. 55.)

## I.   BACKGROUND

On February 27, 2023, Plaintiff Manuel M. Soares ("Plaintiff"), proceeding pro se, initiated this action by filing a Complaint against Defendant City of San Diego (the "City" or "San Diego"). Plaintiff alleges that Defendant San Diego violated Title II of the Americans with Disabilities Act ("ADA") when it added bike lanes to Voltaire Street and thereby decreased the width of the public street's parking spaces. (Compl., ECF No. 1 at 1.)

23-cv-369-WQH-DEB

On May 22, 2023, Defendant San Diego filed a Motion to Dismiss. (ECF No. 10.) On October 19, 2023, the Court denied the Motion to Dismiss. (ECF No. 17.) On November 1, 2023, Defendant San Diego filed an Answer. (ECF No. 19.)

On April 3, 2024, Plaintiff filed a Motion for Summary Judgment. (ECF No. 32.) On June 28, 2024, Defendant San Diego filed an Opposition. (ECF No. 41.) On July 19, 2024, Plaintiff filed a Reply. (ECF No. 44.)

On August 2, 2024, Defendant San Diego filed a Motion for Summary Judgment. (ECF No. 46.) On September 10, 2024, Plaintiff filed an Opposition. (ECF No. 50.)

On March 28, 2025, the Court issued an Order granting Defendant San Diego's Motion for Summary Judgment (ECF No. 46) and denying the Plaintiff's Motion for Summary Judgment (ECF No. 32) (the "Order on Motions for Summary Judgment"). (ECF No. 53.) On the same day, the Clerk of the Court entered judgment in favor of Defendant San Diego and against Plaintiff. (ECF No. 54.)

On April 16, 2025, Plaintiff filed the pending Motion for Reconsideration. (ECF No. 55.) On May 9, 2025, the City filed an Opposition. (ECF No. 57.) On May 19, 2025, Plaintiff filed a Reply. (ECF No. 58.)

## II.    CONTENTIONS

Plaintiff moves the Court for reconsideration of its Order on Motions for Summary Judgment (ECF No. 53) pursuant to Federal Rule of Procedure 60(b). (ECF No. 55 at 1.)

Plaintiff contends that he failed to "explain in detail his disability parking issues" in his earlier filings and that the Court denied his Motion for Summary Judgment because of this "failure." *Id.* at 2–3. Plaintiff now "attempt[s] to rectify the deficiencies" in his Complaint. *Id.* at 3. Plaintiff describes in greater detail the challenges that he encounters while entering and exiting his vehicle when parked on Voltaire Street:

> After having suffered two strokes, the [P]laintiff has been afflicted with the loss of muscle function, muscle weakness, and partial paralysis on the entire right side of his body. . . .
>
> Plaintiff owns a 2006 Toyota Truck with a factory installed foot-rail. The foot rail is about 5 feet long, 3 inches wide, and sits approximately 1 ½ feet off the

ground. The plaintiff uses this foot rail along with a factory installed handle affixed on the upper left-hand side of his driver's seat door to enter/exit his truck.

When parked on a level surface he does not have to exert himself with as much effort or concern. However, when parked on Voltaire Street he experiences difficulties when exiting/entering his vehicle with an unlevel surface and a higher risk of falling, specifically with a 3-inch foot fail in inclement weather.

When the plaintiff opens his driver's door, he places his right hand on the upper-left handle and his right foot on the foot-rail to enter the truck. Here is where he experiences great difficulties having to exert additional effort using both his right hand and foot to lift himself up while simultaneously lifting his left foot and placing it on this foot-rail next to his right foot. This causes excruciating pain to the entire right side of his body, including the right hand, wrist, shoulder, lower back, and lower limbs, specifically his right ankle. . . .

Because he parks at an angle on the curb [when parking on Voltaire Street], he can't use the foot rail as intended.[1] Parking this way causes extra physical strain, leading to pain in his right arm and both legs.

*Id.* at 3–4. Plaintiff requests that the Court reconsider its Order on Motions for Summary Judgment (ECF No. 53) because the deficiency of his earlier pleadings "should be regarded as excusable neglect." (ECF No. 55 at 3.) Plaintiff submits a statement of verification in which he "swear[s] under penalty of perjury" that the statements in his Motion for Reconsideration are true and correct. *Id.* at 8.

Plaintiff also purports to "raise newly discovered evidence demonstrating[] that the City of San Diego has not been forthcoming with this [C]ourt." *Id.* at 3. Plaintiff s requests that the Court take judicial notice of twenty-five (25) photographs purportedly "taken at various locations" on Voltaire Street. *Id.* at 5; *see* ECF Nos. 55-3, 55-4. Plaintiff contends that these photographs indicate that the City committed a "fraud upon the [Court]" by making misrepresentations during the discovery process about its plans for development

---

[1] Plaintiff previously alleged that the narrowed parking spaces on Voltaire Street require him "and his neighbors . . . to park partially up on the curb in order to be safe while entering/exciting their vehicles." (Compl. at 4.)

23-cv-369-WQH-DEB

on the street. *Id.* at 5–6. Plaintiff contends that this "new evidence" merits reconsideration of the Order. *Id.* at 6.

In response, Defendant San Diego contends that Plaintiff "is attempting to relitigate the issues" that the Court addressed at the summary judgment phase. (ECF No. 57 at 3.) With respect to Plaintiff's first argument, Defendant San Diego contends that Plaintiff "adequately demonstrated his disabilities and difficulties" in his earlier filings and does not now present "new or different facts or circumstances" that merit reconsideration. *Id.* Defendant San Diego also contends that the Court "held on grounds unrelated to [Plaintiff's] specific disabilities that the City was entitled to judgment," and that the "information provided in his reconsideration motion . . . would not have changed the Court's outcome." *Id.* at 5. With respect to Plaintiff's second argument, Defendant San Diego contends that Plaintiff "has not met the burden to show that [the photographs are] actually newly discovered evidence" and that the evidence, if considered, "would not have any [e]ffect on the substance of the Court's order." *Id.* at 7. Defendant San Diego also contends that it would be inappropriate for the Court to take judicial notice of the photographs because they are "not generally well known, and they are subject to reasonable dispute because they lack foundation and are hearsay." *Id.* at 8.

## III.   MOTION FOR RECONSIDERATION

### a.  Legal Standard

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

23-cv-369-WQH-DEB

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In the Ninth Circuit, courts determine whether "neglect is excusable" based on an "equitable analysis" that considers "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Lemoge v. United States*, 587 F.3d 1188, 1194 (9th Cir. 2009) (quoting *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000).)

The "excusable neglect" standard of Rule 60(b)(1) is "not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006). "Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Engleson v. Burlington R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (quotation omitted).

For parties represented by legal counsel, the Ninth Circuit has "clearly and repeatedly" held that mistake of law by an attorney does not constitute an adequate a basis for relief under Rule 60(b)(1). *Castillo-Antonio v. Iqbal*, No. 14-CV-03316-KAW, 2017 WL 3335682, at *4 (N.D. Cal. Aug. 4, 2017) (citing *Latshaw*, 452 F.3d at 1101)).

Despite courts' obligation to construe pro se pleadings liberally, *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), courts have denied relief to pro se parties seeking relief under Rule 60(b) who fail to comply with its standards. *Schussler v. Webster*, Case No. 07cv2016 IEG (AGB), 2009 WL 648925, at *5 n.7 (S.D. Cal. 2009) (denying a pro se party's motion under Rule 60(b)(1) claiming that reconsideration was appropriate because of his "lack of the legal knowledge required to competently oppose the summary judgment motion"); *see also Adams v. Hedgpeth*, No. LACV1103852VBFFFM, 2016 WL 4035607, at *4 (C.D. Cal. June 8, 2016) (denying a pro se prisoner's motion under Rule 60(b) as

untimely because, in part, the "petitioner [raised] no colorable argument that he was somehow unable to learn earlier the bases for his arguments"); *Stockton v. Billings*, No. 1:10CV00586JLTHC, 2010 WL 2402841, at *1 n.1 (E.D. Cal. June 10, 2010) (stating that the Rule 60(b)(1) standard is "not satisfied simply because Petitioner lacks legal training."); *In re Waksberg*, No. CV 08-07393 MMM, 2009 WL 10680796, at *3 (C.D. Cal. Aug. 5, 2009) ("The fact that appellant was proceeding pro when [filing a pleading] . . . does not justify Rule 60(b)(1) relief."); *Sudduth v. Griffis*, No. CV 08-4563 PSG JWJX, 2009 WL 592626, at *1 (C.D. Cal. Mar. 5, 2009) ("Despite Plaintiff's arguments otherwise, the simple fact that he is proceeding pro se is not reason enough to grant relief under Rule 60(b)(1).")

### b. Discussion

The Court granted Defendant San Diego's Motion for Summary Judgment (ECF No. 46) and denied Plaintiff's Motion for Summary Judgment (ECF No. 32) because there was no genuine dispute of material fact as to whether the City's resurfacing of Voltaire Street discriminated against Plaintiff because of his disabilities. (ECF No. 53 at 10.) Defendant San Diego contended that "Plaintiff was not excluded from any on-street parking program because everyone near him, along Voltaire Street, has the same amount of parking space on the street." (ECF No. 46-1 at 12.) Plaintiff indeed alleged that Defendant San Diego's resurfacing of Voltaire Street "affected the whole side of that street, the disabled parking, the regular parking, everybody" (ECF No. 46-17 at 54:1–4; *see id.* at 92:14–22).

The Court wrote in its Order on Motions for Summary Judgment: "Plaintiff's testimony is devoid of any explanation as to how the difficulties that he experiences with parking on Voltaire Street are by reason of his disability or otherwise any different from the difficulties experienced by others without disabilities." (ECF No. 53 at 11.) Based on the evidence offered at that stage, the Court held that "no reasonable jury could find from Plaintiff's testimony that the width of the on-street public parking on Voltaire Street burdens Plaintiff in a manner different from or greater than it burdens non-disabled residents." *Id.* at 12.

6

The Court also found that Plaintiff failed to produce evidence in support of his claim that the "Blue Zone" parking space, which Defendant San Diego installed in front of Plaintiff's home prior to the initiation of his lawsuit, has been rendered "inoperative and inaccessible" by the addition of bike lanes on Voltaire Street. *Id.* at 3, 14. The Court accordingly granted judgment in favor of Defendant San Diego.

Plaintiff now purports to offer new testimony that, unlike his prior statements, indicates that he suffers particular and serious harm related to his disability. The sworn statements submitted with the Motion for Reconsideration (ECF No. 55) purportedly indicate that the bike lanes on Voltaire Street may impose a more serious burden on Plaintiff because entering and exiting his truck while parked partially on the sidewalk is especially strenuous for him due to his alleged physical disabilities. Plaintiff states that he "mistakenly assumed" that evidence "demonstrating that he and his neighbors were being forced to park at an angle on the sidewalk" would be sufficient to support his claims at the summary judgment stage. (ECF No. 55 at 3.) After the Court's discussion of his legal burden under the ADA in its Order on Motions for Summary Judgment, Plaintiff now attempts to plead with greater specificity the challenges imposed on him by reason of his disability.

Plaintiff's Motion for Reconsideration does not meet the "excusable neglect" standard of Rule 60(b)(1). A party's ignorance of the law is not adequate ground to grant relief under Rule 60(b)(1). *Engleson*, 972 F.2d at 1043 (9th Cir. 1992); *Schussler*, 2009 WL 648925, at *5 n.7 (applying this principle to a pro se litigant). The record indicates that Plaintiff was aware of the relevant contentions raised by Defendant San Diego and provided adequate opportunity to respond prior to the Court's Order on Motions for Summary Judgment. (ECF No. 53.) Defendant San Diego, in its Motion for Summary Judgment, contended that Plaintiff failed to establish that he was "singled out for his disabilities by the City's resurfacing of [Voltaire Street]" and, separately, that the Blue Zone program is an existing, reasonable modification program for disabled residents who require accessible on-street parking. (ECF No. 46 at 12, 20.) In his Opposition to Defendant

23-cv-369-WQH-DEB

San Diego's Motion for Summary Judgment, Plaintiff appeared to acknowledge those contentions and raised his own in response. (*See* ECF No. 48-3 at 3–4 (contending that Defendant San Diego "offers no evidence . . . that they haven't discriminated against him by creating and subjecting him to this dangerous and unnecessary street alteration" and contending that the Blue Zone program is not a "reasonable modification parking program")). There is no basis to hold that Plaintiff's failure to timely raise the evidence and contentions in his pending Motion for Reconsideration resulted from excusable neglect within the meaning of Rule 60(b)(1).

The Motion for Reconsideration also does not establish that relief would be proper under any other provision of Rule 60(b). Plaintiff's contentions related to "duplicitous pleadings" by the City and the submission of twenty-five photographs taken on Voltaire Street are insufficient to warrant reconsideration under Rule 60(b)(2) and (b)(3). Rule 60(b)(2) requires that: "(1) the moving party [] show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quotation omitted). Here, Plaintiff's purported discovery that bike lanes were added to "both sides of the hill where he lives" is not of such magnitude that it might have changed the disposition of the Court's Order on Motions for Summary Judgment. (ECF No. 55 at 6.) Rule 60(b)(3) requires that the moving party "prove by clear and convincing evidence" that the earlier judgment was obtained through fraud, misrepresentation, or misconduct and that the "conduct complained of preventing the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). Plaintiff contends that the development of bike lanes on "both sides" of streets in his neighborhood is inconsistent with plans submitted by the City during this action. (ECF No. 55 at 5–6.) Plaintiff's basis for contending fraud by the City is unclear and is unsupported by photographs of his

23-cv-369-WQH-DEB

neighborhood. (ECF No. 55-3, 55-4.) The Motion for Reconsideration fails to show the Court's earlier judgment was obtained through any misrepresentation.

The Motion for Reconsideration (ECF No. 55) is denied. Moreover, for the reasons discussed below, even if the Court reconsidered its Order on Motions for Summary Judgment in light of Plaintiff's new evidence, its holding would remain the same.

## IV.   SUMMARY JUDGMENT

### a.   Legal Standard for ADA Claim

Title II of the ADA applies to "any State or local government." 42 U.S.C. § 12131(1)(A). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. In order to prove a violation of Title II of the ADA, a plaintiff must show: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quotations omitted) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). "An individual is excluded from participation in or denied the benefits of a public program if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities.'" *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 987 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149). The Ninth Circuit has held that Title II requires public entities to "maintain accessible on-street public parking." *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014).

/ / /

/ / /

9

### b. Plaintiff's New Testimony

Plaintiff, in his new testimony, states that his "history of medical conditions affecting physical limitations" causes him "difficulties" when entering and exiting his vehicle while parked on the curb of Voltaire Street. (ECF No. 55 at 3–4.) Plaintiff, in his Motion for Reconsideration, now describes with specificity his physical challenges entering and exiting his vehicle while parked on the curb and the "excruciating pain" he suffers as a result. (ECF No. 55 at 4.) This new evidence would not provide good cause for the Court to issue a different holding than it reached in its Order on Motions for Summary Judgment.

The Ninth Circuit has held that "facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced." *McGary*, 386 F.3d at 1265. In other words, a plaintiff may successfully demonstrate that a neutral policy—here, a resurfacing program affecting all San Diego residents living on or using a public roadway—discriminates against them "by reason of" their disability because the policy imposes an unusually large burden on them. *Id.* In *McGary*, the plaintiff suffered from AIDS-related illnesses and was unable to comply with a municipal rule requiring the removal of debris from outdoor areas of one's property. *Id.* at 1260. The plaintiff sought an extension of time to clean his yard and thereby comply with the municipal rule, but the city denied his request and imposed a fee for the removal of debris from his yard. *Id.* at 1261. The plaintiff then filed a complaint asserting an ADA claim based on the city's denial of his request for additional time. *Id.* The Ninth Circuit overturned the district court's dismissal of his complaint because, although the nuisance abatement policy was facially neutral and universally enforced, the policy burdened the plaintiff "in a manner different from and greater than it burdened non-disabled residents, solely as a result of his disabling condition." *Id.* at 1265; *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (holding that a mandatory quarantine period for dogs entering Hawaii discriminated against blind plaintiffs because "its enforcement burden[ed] visually-impaired persons in a manner different and greater than it burdens others").

District courts in the Ninth Circuit have applied the reasoning from *McGary* to deny motions to dismiss for cases in which plaintiffs assert ADA claims related to facially neutral policies that impose additional burdens on disabled persons. *See, e.g.*, *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 956, 965 (N.D. Cal. 2020) (alleging that a municipal program limiting price increases for rental properties discriminated against wheelchair users because most of the city's "accessible rental units" were recent developments excluded by the program's cutoff date); *Cooley v. City of Los Angeles*, No. 2:18-CV-09053-CAS-PLA, 2019 WL 3766554, at *2, *5 (C.D. Cal. Aug. 5, 2019) (alleging that the systematic disposal of property on the sidewalk discriminated against an unhoused individual with a hernia who could not carry her property to another location in a single bag). Prior to the filing of this action, Judge John A. Houston of the Southern District of California denied a motion to dismiss filed by Defendant San Diego in a case with nearly identical facts that likewise sought relief under Title II of the ADA based on the City's resurfacing of Voltaire Street. *See Keith v. City of San Diego*, No. 21-cv-1782-JAH-JLB, 2022 WL 4241271, at *3 (S.D. Cal. Sept. 12, 2022). Plaintiff Soares lived with the plaintiff in the case and described that case in his Complaint.

A plaintiff's allegation that a facially neutral policy imposes a greater burden on disabled persons, however, is not alone sufficient to state a claim under Title II of the ADA. In *Navarro v. City of Mountain View*, for example, the District Court for the Northern District of California granted a motion to dismiss an ADA claim on the basis that the plaintiffs had not adequately alleged discrimination "because of their disabilities." No. 21-cv-05381-NC, 2021 WL 5205598, at *7 (N.D. Cal. Nov. 9, 2021). In that case, the plaintiffs' ADA claim arose from the passage of city ordinances that prohibited oversized vehicles—often used as temporary housing for those unable to afford a permanent home—from parking on public streets. *Id.* at *1–*2. The district court wrote that enforcement of the ordinances could necessitate an "impossible" choice between the risk of losing one's shelter upon the ticketing and/or towing of their oversized vehicle or "be[ing] forced out of the City altogether." *Id.* at *2. The court wrote that this "burden disproportionally

impacts people with disabilities. Those individuals face disproportionate harm if they are forced to move into public shelters or if they are too far from their medical providers and social support networks." *Id.* However, the court granted the motion to dismiss with respect to the plaintiffs' ADA claim because this "disproportionate burden is not enough to sustain a Title II claim." *Id.* at *7 ("In fact, it seems inconsistent to argue that the Ban harms *all* [oversized vehicle] residents while simultaneously arguing that the Ban *targets* [oversized vehicle] residents with disabilities because of their disabilities.").

The Court notes, as it did in its earlier Order on Motions for Summary Judgment, that the *Navarro* court's reasoning applies to the instant case. (ECF No. 53 at 11.) Plaintiff alleges that the addition of bike lanes and narrowing of parking spaces on Voltaire Street endangers all residents. (Compl. at 4–5 (alleging an "elevated increase of car collisions" and a lack of "safety measures to ensure the safety and welfare of others".) The physical burden imposed on Plaintiff—even if it may be heightened by virtue of his disability—is not necessarily sufficient to plead a claim under Title II of the ADA. "The ADA is not a public-safety statute." *Armbrester v. Alameda Cnty.*, No. 17-CV-05231-LB, 2018 WL 4181898, at *3 (N.D. Cal. Aug. 30, 2018). "The purpose of the ADA's reasonable accommodation requirement is to guard against the facade of equal treatment when particular accommodations are necessary to level the playing field." *McGary*, 386 F.3d at 1267 (quotation omitted). The *McGary* court held that neutral policies "may" violate the ADA "when such policies unduly burden disabled persons," but not that *any* difference in the challenges faced by disabled and non-disabled persons is sufficient for a reasonable fact-finder that the federal law has been violated by an otherwise "consistently enforced" policy. *Id.* at 1265.

The Court, in its earlier Order, discussed a case that Plaintiff had not cited in his briefing: *Cohen v. City of Culver City*, 754 F.3d 690, 693–94 (9th Cir. 2014). In *Cohen*, a disabled plaintiff brought a claim under Title II of the ADA after falling and suffering injuries while navigating around a vendor's display that blocked the disabled-access curb on a public street. *Id.* at 693–94. The plaintiff asserted his claim against the defendant

12

23-cv-369-WQH-DEB

municipality for permitting the vendor to block the curb and for failing to post signage directing disabled pedestrians to alternative access routes. *Id.* at 693. The district court held that the defendant was entitled to summary judgment, but the Ninth Circuit determined that the court district erred—in part—because a "genuine dispute of material fact exist[ed] as to whether the City denied Cohen access to the sidewalk *on the basis of his disability* by permitting a private vendor's display to completely block the existing curb ramp." *Id.* at 697, 699 (emphasis added). The Ninth Circuit wrote that a jury might reasonably conclude that the defendant municipality had "violated a regulation requiring it to maintain disabled access features in good working order." *Id.* (citing 28 C.F.R. § 35.133(a)). As relevant here, the appellate court continued:

> Our discussion of this particular theory of liability is not meant to imply that it is the *only* way the City may have denied Cohen access to the sidewalk by reason of disability. More generally, Title II imposes upon public entities a "duty to accommodate" disabled persons. Even facially neutral government actions that apply equally to disabled and nondisabled persons may violate Title II if the public entity has failed to make reasonable accommodations to avoid unduly burdening disabled persons.

> For this reason, poorly maintained public sidewalks may be a form of discrimination proscribed by Title II. Obstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities. This is precisely the sort of "subtle" discrimination stemming from "thoughtlessness and indifference" that the ADA aims to abolish. Here, a jury could conclude that the City discriminated against Cohen by reason of his disability by failing to take simple, low-cost, reasonable measures to accommodate persons who rely on curb ramps to navigate public sidewalks. . . . By failing to adopt them, the City may have engaged in the "simple exclusion" of disabled persons through "thoughtlessness" and "inaction" that constitutes discrimination under the ADA.

*Id.* at 700–01 (citations omitted).

In the Court's earlier Order, it distinguished the instant action from *Cohen* because "the causal link between the purported ADA violation and the plaintiff's disability was clear in *Cohen*." (ECF No. 53 at 18.) The Court wrote that Plaintiff "has not adduced any

evidence that, because of his disability, he is burdened by the City's alterations to Voltaire Street in a manner different from non-disabled residents who park on the street." *Id*.

The issue is whether Plaintiff's specific difficulties in navigating the parking spaces that "expos[e] plaintiff and other[s] to a substantial risk of life" are sufficient to meet the standard described in *McGary*. (Compl. at 3.) Defendant San Diego contends, in its Opposition to the Motion for Reconsideration, that:

> [t]hese additional facts, even if considered by the Court, fail to shift the analysis. Plaintiff would still not be able to show that the street changes discriminate against him because they still affect everyone who parks on that stretch of Voltaire Street equally. Further, Plaintiff's allegation that he must park up on the curb, which he argues exacerbates his ability to exit his vehicle because of his disabilities, has nothing to do with his disabilities . . . . Plaintiff chooses to park up on the sidewalk curb of his own accord and he pointed to no evidence showing that because of his disability he needs to park that way.

(ECF No. 57 at 5–6.)

Plaintiff, in response, contends that "he faces a higher risk of falling" while parking on Voltaire Street compared to other residents who "are not faced with the task of using a handle and a foot-rail to access their vehicle." (ECF No. 58 at 2.)

Plaintiff's new testimony is insufficient to establish that a reasonable factfinder could determine that Plaintiff suffered discrimination by reason of his disability. In *McGary*, the plaintiff was hospitalized "because of his illness" and was accordingly unable to remove the debris from his front yard in compliance with the municipal ordinance. *McGary*, 386 F.3d at 1260, 1264. His neighbors without disabilities could comply with the ordinance by virtue of their health. The plaintiff claimed that the city's refusal to accommodate his request imposed a "greater" burden on him "solely as a result of his disabling condition." *Id.* at 1265. In *Cohen*, the disabled plaintiff encountered the vendor on the sidewalk and "reasonably believed he had no other choice but to negotiate the curb ramp." 754 F.3d at 693. The "vendor's display [that] completely block[ed] the curb ramp" providing disabled access to the sidewalk forced the plaintiff—and others with similar

23-cv-369-WQH-DEB

disabilities—to "risk serious injury" while undertaking the "daily activit[y]" of walking down a public sidewalk. *Id.* at 693, 700.

In these cases, the facially neutral policy imposed a specific and undue burden on disabled persons that was not merely a magnification of a challenge shared by all who encountered the policy. In other words, a policy that appeared neutral imposed significant costs on disabled persons but did not impose the same manner of costs on non-disabled persons. The disabled plaintiffs in each case suffered from those policies by virtue of their disability in a style that was not shared with their non-disabled neighbors. The plaintiff in *McGary* stated that the city's policy burdened him "different from and greater than" his non-disabled neighbors. *McGary*, 386 F.3d at 1265.

Here, Plaintiff alleges that the narrow parking spaces on Voltaire Street pose a safety risk to him and his neighbors alike. (Compl. at 4 (alleging that "plaintiff and his neighbors are forced to park partially up on the curb in order to be safe while entering/exiting their vehicles"). Plaintiff identifies a burden shared by both disabled and non-disabled persons. Plaintiff's new evidence in his Motion for Reconsideration does not establish a different and undue burden that Plaintiff faces because of the City's otherwise neutral resurfacing policy.

Plaintiff's new evidence also fails to address the Court's further finding at the summary judgment stage that Plaintiff failed to create a genuine of issue of material fact as to Defendant San Diego's showing that it provided a "Blue Zone" parking space in front of Plaintiff's home. (ECF No. 53 at 14–15). In *Cohen*, the Ninth Circuit explained that "simple, low-cost, reasonable measures" to accommodate disabled persons, including the posting of temporary signage near the sidewalk at issue in that case, may qualify as a reasonable accommodation for persons facing discrimination from a public entity's policies. *Cohen*, 754 F.3d at 700–701; *see also Wong v. Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999), as amended (Nov. 19, 1999) (stating that the reasonableness of an accommodation "depends on the individual circumstances of each case" but that a public entity is not required to "make fundamental or substantial modifications to its

23-cv-369-WQH-DEB

program or standards"). In support of its Motion for Summary Judgment, Defendant San Diego provided evidence indicating that it installed a Blue Zone in front of Plaintiff's home. (ECF No. 46-15 (record of installation); ECF No. 46-19 (describing the street parking width in the Blue Zone as 6' 11"). The Motion for Reconsideration does not provide a basis to hold that the Plaintiff has created a genuine dispute of material fact as to the reasonableness of the Blue Zone program for accessible on-street parking.

Even if Plaintiff had satisfied the Rule 60(b) standard for reconsideration, the Court would again conclude that Plaintiff has failed to create a genuine dispute of material fact as to an essential element of his claim under Title II of the ADA. (ECF No. 53 at 21.) Defendant San Diego remains entitled to summary judgment in this action.

## V.   CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Reconsideration (ECF No. 55) is denied.

Dated:  March 26, 2026

Hon. William Q. Hayes
United States District Court

23-cv-369-WQH-DEB